OPINION OF THE COURT
Vito M. DeStefano, J.
In this action to recover damages for, inter alia, breach of contract and conversion, the defendant 1141 Realty LLC moves for an order pursuant to “CPLR 3211 (a)(4), (a)(7) and/or RPAPL 1301 (3) dismissing the complaint” insofar as asserted against it. The defendant also requests “costs and expenses of this motion.”
For the reasons that follow, the motion is denied, except that the branch of the motion seeking dismissal of the eighth cause of action insofar as asserted against 1141 Realty is granted and that cause of action is dismissed insofar as asserted against 1141 Realty.
Initially, the court notes that the majority of the motion is substantially defective. The branch of the motion seeking dismissal of the first, sixth, seventh, ninth and tenth causes of action pursuant to CPLR 3211 (a) (4) is untimely. CPLR 3211 (e) requires that a motion to dismiss pursuant to section (a) (4) be made “[a]t any time before service of the responsive pleading is required.” Here, 1141 Realty served the instant motion approximately one year after service of its answer, which itself was untimely served. That the court could, as an exercise of discretion, and after adequate notice to the parties, treat this branch of the motion as one seeking summary judgment (CPLR 3211 [c]) does not require it to do so.
It is necessary for the court to point out that it is constantly barraged by defective papers and papers reflecting a neglect of duties which serve to shift responsibility to the court to expend numerous hours unraveling nuanced procedural and substantive issues and correcting easily avoided attorney errors. The *593 court declines to overlook the errors herein, particularly where proper objection has been made by the opposing party.
Second, the intention of CPLR 3211 (c) is not to resurrect untimely motions made pursuant to CPLR 3211 (a) or (b) or to “cover” for attorney errors. Rather, application of the statutory subdivision is “based on the premise that in a given instance the proof adduced to the court . . . may be as complete as it usually is on an outright summary judgment motion under CPLR 3212, enabling the court to discern that there are no genuine factual issues” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3211:44, at 67). In short, where the record before it is complete and the court determines that conversion serves the interests of the parties and the court, it may order conversion. Here, it is significant that at least two of the arguments raised in 1141 Realty’s reply papers, and the documents they reference, could not be considered on this motion because they were raised for the first time therein (see Azzopardi v American Blower Corp., 192 AD2d 453 [1st Dept 1993]).[1]
Third, an issue raised in the instant motion and in opposition thereto, and which would be potentially prejudicial if the court were to convert the motion, concerns 1141 Realty’s request for dismissal pursuant to RPAPL 1301 (3). That statute, made applicable here via Lien Law § 43, provides that while a mechanic’s lien foreclosure proceeding is pending “no other action shall be commenced or maintained to recover any part of the . . . debt, without leave of the court in which the former action was brought.” It is undisputed that the plaintiff herein is seeking to foreclose a mechanic’s lien in New York County against 1141 Realty in connection with work it performed at 1141 Realty’s property. Without addressing the merits of the plaintiff’s argument concerning RPAPL 1301 (3), the statute itself provides no mechanism for dismissal. Dismissal, therefore, if at all, must be sought under CPLR 3211 or 3212 but, unfortunately, the motion fails to cite either provision, in violation of CPLR 2214 (a). This failure is important in light of the possibility that 1141 Realty waived this argument as a basis for dismissal by failing to assert it as an affirmative defense in its answer, which has been alluded to in the opposition papers. The subject of possible waiver and how a defense pursuant to RPAPL *594 1301 (3) would be properly raised was not addressed adequately in the papers.
For all the foregoing reasons, the court will not treat the motion as one for summary judgment. Nevertheless, nothing contained herein shall bar 1141 Realty from correctly seeking further dispositive relief.
Regarding the branch of the motion seeking dismissal of the eighth and thirteenth causes of action pursuant to CPLR 3211 (a) (7), the following is noted:
This litigation arises out of a contractual relationship between the plaintiff and defendant 1141 Realty in which the plaintiff was engaged to perform construction work at premises owned by 1141 Realty. According to the complaint, in April 2007, the plaintiff began demolition of a structure at the subject premises (located at 1141 Broadway, New York, New York). The principal of 1141 Realty, defendant Ibrahim Saleh, allegedly contacted G. Hourani, the principal of plaintiff, and suggested that the plaintiff open an account at Banco Popular, where Saleh maintained a checking account, in order to facilitate the transfer of funds to plaintiff in connection with the construction work. Based on his suggestion, plaintiff opened a checking account at Banco Popular. Although Hourani allegedly instructed defendant Sarita Vaswani (an employee of Banco Popular) to forward checking statements to plaintiffs address, “as the result of collusion between I. Saleh, S. Vaswani and E. Nahas (an attorney and defendant herein) ... all of Banco Popular’s statements for the Account were mailed to the office of E. Nahas . . . .” As a result, plaintiff received no account statements during the time that it “worked as the general contractor for the hotel construction project at 1141 Broadway” (exhibit A, complaint $1Í 1-38). Saleh had previously informed Hourani that he deposited monies into the account, which was used by plaintiff to pay various subcontractors. However, upon examination of the account statements, plaintiff discovered that money was transferred to companies with whom it had no business relationship. In addition, plaintiff discovered that other unauthorized payments were made from the account; the amount of unauthorized wire transfers exceeded $1.4 million. Plaintiff further alleges that many checks drawn on the account were forged (exhibit A, complaint $$ 40-63).
In the eighth cause of action, plaintiff claims that defendants I. Saleh, K. Bin Taleb (described in paragraph 27 of the complaint as assistant to I. Saleh) and 1141 Realty formed another construction company,
*595 “BTB Construction, in or about December 2008, for the bad faith purpose of misappropriating and exploiting BTB LLC’s [plaintiffs] trade name, tools, equipment, business relationships, and good will, and so that 1141 Realty and I. Saleh could avoid paying BTB LLC for the construction of the hotel at 1141 Broadway, which was close to completion at the time . . . BTB Construction, acting through I. Saleh, and K. Bin Taleb, acted in bad faith to misappropriate and exploit BTB LLC’s trade name ... to pass itself off as BTB LLC, and thereby misleading BTB LLC’s employees, vendors, customers, banks and others into believing they were dealing with BTB LLC, and by unlawfully retaining possession or, and using BTB LLC’s tools and equipment . . . for their [the defendants’] own commercial advantage, and to BTB LLC’s detriment” (exhibit A, complaint 1Í133).[2]
Plaintiff seeks damages in the amount of $200,000 for “unfair competition.”
In 1141 Realty’s opposition papers, counsel asserts that “under the allegations in the Verified Complaint, BTB. Corp. was no more than a tool employed by Saleh and Bin Taleb, who were acting within the scope of their duties as employees of 1141 Realty, for 1141 Realty’s direct benefit” and that they were “integral parts of a conspiracy which looted money from plaintiff’s bank accounts, created an entity whose name was substantially cloned from plaintiffs name to carry on plaintiffs business . . . misled plaintiffs employees, vendors, customers, banks . . . into believing that they were still dealing with plaintiff’ (affirmation of Gene R. Kazlow 1111 28, 30).
In the thirteenth cause of action, the plaintiff seeks damages in the amount of $72,000 against I. Saleh, K. Bin Taleb, 1141 Realty and BTB Construction (an entity allegedly formed by them) for conversion of funds from plaintiffs account at Citibank on or about November 13, 2007 and December 3, 2007 by “causing two unauthorized electronic payments to be made from that account to an American Express account which, upon further information and belief, is the personal American Express *596 account of K. Bin Taleb” (exhibit A, complaint H 161). The cause of action further alleges that the conversion “was perpetrated without the consent or authorization ... of the rightful owner of the money in the account” (exhibit A, complaint 1i 162).
According to plaintiffs opposition papers, “these allegations sufficiently state a cause of action against 1141 Realty, since the conversion was committed by employees of 1141 Realty, acting within the scope of their duties as part of their overall scheme to supplant plaintiff and loot its assets” (affirmation of Gene R. Kazlow H 31).
It is axiomatic that in determining whether a cause of action exists, the pleading must be afforded a liberal construction: the facts alleged are accepted as true, the plaintiff is accorded the benefit of every favorable inference and the court determines whether the facts alleged fit within any cognizable legal theory (Leon v Martinez, 84 NY2d 83 [1994]; Morone v Morone, 50 NY2d 481 [1980]; May Cheung v Chao Fu, 75 AD3d 615 [2d Dept 2010]).
Contrary to the plaintiffs contention, the eighth cause of action fails to state a claim for unfair competition against 1141 Realty, the allegations of 1141 Realty’s alleged wrongful conduct therein being set forth in the most conclusory terms. The eighth cause of action contains a conclusory assertion that 1141 Realty formed another entity for the purpose, inter alia, of misappropriating plaintiff’s goodwill and business relationships. However, the specific allegations of wrongdoing comprising the tort of unfair competition are made solely against I. Saleh and K. Bin Taleb. The assertion in the opposition papers that Saleh and Taleb were acting within the scope of their employment by 1141 Realty is unfounded and cannot be reasonably inferred from the pleadings. Significantly, nowhere in the complaint is it alleged that Saleh, who is described as a principal of 1141 Realty, or Taleb, who is described as an assistant to Saleh, were employed by 1141 Realty or that they were acting within the scope of their duties which would render 1141 Realty vicariously liable for their acts. As such, the specific allegations of wrongdoing attributed to Saleh and Taleb, as stated in the eighth cause of action, cannot reasonably be imputed to 1141 Realty.
The thirteenth cause of action, in contrast, is sufficiently, though inartfully, pleaded. The cause of action alleges that 1141 Realty converted plaintiff s funds for the benefit of another by making unauthorized transfers from plaintiffs bank account. *597 Although the plaintiff is incorrect to the extent it suggests that a reasonable inference may be drawn that the allegedly wrongful conduct of Saleh and Taleb may be imputed to 1141 Realty, as noted, the pleading, “on its face,” states a cause of action for conversion of funds by 1141 Realty (see Meese v Miller, 79 AD2d 237 [4th Dept 1981]).
It is hereby ordered that the motion is denied except for the branch thereof seeking dismissal of the eighth cause of action insofar as asserted against 1141 Realty, which is granted, and that cause of action is dismissed insofar as asserted against 1141 Realty.

. 1141 Realty’s arguments concerning matters raised in plaintiffs reply to counterclaim and what is “covered” under the terms of the contract, which was annexed to the reply papers, will not be considered.

. In paragraph 50 of the complaint, the plaintiff alleges that I. Saleh and K. Bin Taleb purposefully formed BTB Construction with the intent of preventing it from completing construction at 1141 Broadway, taking over its operations at that location, and appropriating its money, tools, equipment and goodwill.